In re **GRAND JURY PROCEEDINGS.**

David Z. **CHESNOFF, Witness–Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 93–17012.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 2, 1993.*

Memorandum Dec. 2, 1993.

Order and Opinion Jan. 12, 1994.

---

("[W]e interpret § 2 of the Sherman Act to condemn predatory pricing when it poses 'a dangerous probability of actual monopolization,' whereas the Robinson–Patman Act requires only that there be a 'reasonable possibility' of substantial injury to competition before its protections are triggered.") (citations omitted).

* The panel unanimously agrees that this case is appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Cir.R. 34–4.

Donald M. Re, Los Angeles, CA, for witness-appellant.

Michael Barr, Asst. U.S. Atty., Las Vegas, NV, for appellee.

Before: SNEED, NOONAN, and TROTT, Circuit Judges.

### ORDER

The memorandum disposition filed December 2, 1993 is redesignated as a per curiam opinion.

### OPINION

PER CURIAM:

■ David Z. Chesnoff appeals the district court's judgment of contempt for his refusal to testify before the grand jury.[1] We have jurisdiction under 28 U.S.C. §§ 1291 and 1826(a). We review the district court's adjudication of civil contempt for abuse of discretion, *In re Grand Jury Proceedings (Lahey)*, 914 F.2d 1372, 1373 (9th Cir.1990), and we affirm.

■ A witness who refuses without just cause to comply with an order of the court to testify before the grand jury may be held in civil contempt. 28 U.S.C. § 1826.

#### Fifth Amendment

Chesnoff asserts his Fifth Amendment right against self-incrimination as just cause for his refusal to testify.

■ The Fifth Amendment guarantees that no person shall be compelled in any criminal case to be a witness against himself. "This provision of the Amendment must be accorded liberal construction in favor of the right it was intended to secure." *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). However, the assertion of this privilege is guided by strict standards. *See id.* The Ninth Circuit has articulated specific standards for asserting the Fifth Amendment privilege:

> To claim the privilege validly a defendant must be faced with substantial hazards of self-incrimination that are real and appreciable and not merely imaginary and unsubstantial. Moreover, he must have reasonable cause to apprehend [such] danger from a direct answer to questions posed to him.

*United States v. Neff*, 615 F.2d 1235, 1239–40 (9th Cir.1980), *cert. denied*, 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1981). The existence of such a hazard of incrimination is generally determined from the "examination of the questions, their setting, and the peculiarities of the case." *Id.* at 1240.

■ In the district court, Chesnoff offered no explanation of how revealing his knowledge or observations of Perry's cruise trip expenditures, income-producing activities and lifestyle would furnish a link in a chain of evidence needed to prosecute Chesnoff for a federal crime. *See Brown v. United States*, 918 F.2d 82, 84 (9th Cir.1990). Instead, Chesnoff's Fifth Amendment claim was based on the grand jury's questions concerning his firm's trust funds and fee arrangement, questions for which Chesnoff was not held in contempt for refusing to answer.[2]

---

1. The original grand jury subpoena required Chesnoff to answer questions regarding the amount of fees paid to Chesnoff's firm by Perry and Perry's wife, the amounts of any trust funds held by Chesnoff's firm during specific tax years, and Chesnoff's knowledge of Perry's expenditures during a European cruise, and his income-producing activities and lifestyle.

However, this appeal is limited to the order entered on November 3, 1993, which found Chesnoff in contempt only for his failure to answer questions regarding his knowledge of Perry's expenditures during the cruise trip and Perry's income-producing activities and lifestyle.

2. Specifically, Chesnoff based his assertion of the privilege on his theory of the government's posi-

Accordingly, we find that Chesnoff's assertion of the privilege against self-incrimination with respect to questions about trust fund and fee arrangements has no bearing on the grand jury's inquiry about his knowledge or observations of Mr. Perry's cruise trip expenditures, income-producing activities and lifestyle. The district court's finding is therefore supported by a reasonable view of the record. *See United States v. Twine,* 853 F.2d 676, 681 (9th Cir.1988).

### Attorney–Client Privilege

Chesnoff further asserts that the issuance of the subpoena is an interference with the attorney-client privilege. First, he claims that the government has abused the grand jury subpoena power by using it for the sole purpose of disqualifying him from representation of Mr. Perry. Second, he claims that the information sought regarding his client's cruise trip expenditures could be obtained from alternative sources.

■ The attorney-client privilege protects confidential communications disclosed by a client to an attorney in order to obtain professional legal service. *United States v. Gray* 876 F.2d 1411, 1415 (9th Cir.1989), *cert. denied,* 495 U.S. 930, 110 S.Ct. 2168, 109 L.Ed.2d 497 (1990).

■ The information sought by the grand jury from Chesnoff does not involve the disclosure of confidential communications made for the purpose of rendering professional legal services. The grand jury seeks information regarding Chesnoff's observation and knowledge of Mr. Perry's expenditures during a European cruise trip, his income-producing activities and his lifestyle. Therefore,

Chesnoff cannot validly assert the attorney-client privilege. *See id.*

■ Chesnoff also argues that the government seeks to disqualify him and thereby violate his client's right to counsel. Chesnoff's argument is premature. It assumes that his compliance with the subpoena will ultimately lead to his testimony against Mr. Perry. However, because Mr. Perry has not been indicted yet, Chesnoff may never actually be required to testify against his client in a criminal prosecution. *United States v. Tornay,* 840 F.2d 1424, 1429–30 (9th Cir. 1988). Therefore, the proper time to assert his client's Sixth Amendment right is at trial. *Id.*

■ Finally, Chesnoff lacks standing to assert the government's obligation to obtain the information it seeks from an alternative source under Department of Justice (DOJ) Guidelines.[3] The DOJ guidelines were promulgated to assist the United States Attorney's Office in its internal operations. They *do not establish rights in favor of witnesses, substantive or procedural, in any civil or criminal matter. In the Matter of Klein,* 776 F.2d 628, 635 (9th Cir.1985). Therefore, Chesnoff lacks standing to assert an alleged violation of internal government guidelines. *Id.*

Moreover, even if Chesnoff had standing to assert a violation of DOJ guidelines, his testimony appears to be the only available source of the information sought.[4] The cruise included stops in several European countries and involved numerous side trips and meals which cannot be verified without Chesnoff's testimony of what he observed while on the trip with Mr. Perry. Therefore, the government's conduct does not appear to have been anything other than a legitimate attempt to verify the Perrys' income and expenditures.

### Nevada Supreme Court Rule 156

Finally, Chesnoff claims that his compliance with the district court's order to testify

tion. The government's position appears to be that an attorney who knowingly holds sums that would be evidence of their client's tax fraud does so at the risk of becoming an accessory to the obstruction of justice.

**3.** In July of 1985 in response to an increased concern over use of grand jury subpoenas on a target's counsel, the Department of Justice issued

a new section of the United States Attorney's Manual entitled "Policy With Regard to the Issuance of Grand Jury or Trial Subpoena to Attorneys for Information Relating to the Representation of Clients." *See* United States Attorney's Manual § 9.2.161(a) (July 18, 1985).

**4.** The government contends that it is Mr. Perry's habit to pay for nearly everything in cash, concealing any trail of his expenditures.

would violate Nevada Supreme Court Rule 156.

 Nevada Supreme Court Rule 156 prohibits an attorney from revealing information relating to the representation of his client with limited exceptions. However, the rule does not contemplate an exception when an attorney is compelled to testify in a grand jury or other proceeding.

 Absent any Nevada authority to the contrary, the Comments to Rule 1.6 of the Model Code of Professional Conduct provide guidance on this issue. The comments provide that:

> If a lawyer is called as a witness to give testimony concerning a client, absent a waiver by the client, ... the lawyer [must] invoke the [attorney-client] privilege when it is applicable. The lawyer must comply with the final order of a court or other tribunal of competent jurisdiction requiring the lawyer to give information about the client.

Upon review of the relevant rules, we find no ethical canon requiring an attorney to withdraw from representation merely for complying with a subpoena. *See United States v. Perry,* 857 F.2d 1346, 1350 (9th Cir.1988). Accordingly, the district court did not abuse its discretion in holding Chesnoff in contempt of court. *In re Grand Jury Proceedings (Lahey),* 914 F.2d 1372, 1373 (9th Cir.1990).

**AFFIRMED.**