In re GRAND JURY SUBPOENAS DAT-
ED DECEMBER 7 AND 8, ISSUED TO
BOB STOVER, CHIEF OF ALBU-
QUERQUE POLICE DEPARTMENT,
Petitioner,

v.

UNITED STATES of America,
Respondent–Appellee,

Steve Nakamura, Albuquerque Police De-
partment Officer; John Does 1 Through
5, Five Albuquerque Police Department
Officers, Intervenors–Real Parties in In-
terest–Appellants.

Nos. 94–2032, 94–2033.

United States Court of Appeals,
Tenth Circuit.

Nov. 21, 1994.

Hughes, Dahlstrom, Cron & Schoenburg, Albuquerque, for appellants.

Mark L. Gross, Dept. of Justice, Washington, DC (Jessica Dunsay Silver, Department of Justice, Washington, DC; John J. Kelly, U.S. Atty., Albuquerque, and Deval L. Patrick, Asst. Atty. Gen., Washington, DC, with him on the briefs), for appellee.

Before ANDERSON, REAVLEY,* and HENRY, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

In these consolidated appeals, we consider whether presentation to a grand jury of a police officer's compelled statement taken pursuant to an internal affairs investigation constitutes a violation of the officer's Fifth Amendment right against self-incrimination. We hold that it does not.

## BACKGROUND

These appeals arise out of the fatal shooting of Peter Klunck by Albuquerque Police Department ("APD") officers on January 27, 1989. Following the shooting, the APD Internal Affairs Unit ("IAU") initiated an investigation into the incident. Department policy provides that APD officers must answer questions put to them during the course of an internal affairs investigation, but departmental regulations also provide that any statement given by an officer cannot be used against that officer in a subsequent criminal prosecution:

> Personnel must, as a condition of continuing employment, truthfully answer any and all questions relating to the matter under investigation regardless of whether they are a participant or a witness to the matter. The determination of whether a question is relevant to the matter under investigation shall be made solely by the investigator conducting the investigation. Nothing contained herein shall be the basis for an individual waiving his Fifth Amendment rights under the Constitution or law of the

Peter Schoenburg (Randi McGinn with him on the briefs), Rothstein, Donatelli,

* The Honorable Thomas M. Reavley, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

United States of America or the State of New Mexico.

Albuquerque Police Department, Administrative Order § 3-43-10(B), Appellants' App. at 19. During the course of the investigation, Officer Steve Nakamura and other APD officers who were at the scene of the Klunck shooting were interviewed by IAU investigators. After receiving the admonition and assurances recited above, the officers answered the questions put to them by the investigator.

In May of 1992, the Federal Bureau of Investigation began a preliminary investigation into the shooting of Mr. Klunck. The FBI requested the internal affairs file from APD Chief Bob Stover who refused the request on the basis that the statements were compelled by department policy and therefore not subject to disclosure. Appellants' App. at 18.

On December 7, 1993, a federal grand jury in Albuquerque investigating the shooting of Mr. Klunck served a subpoena duces tecum on Chief Stover requesting a "[c]omplete copy of the Internal Affairs Report regarding the shooting and subsequent death of Peter James Klunck by officers of the Albuquerque Police Department." Appellants' App. at 12. On December 8, a grand jury in Las Cruces subpoenaed the same documents.

Stover filed a motion to quash or modify the subpoena on the ground that the officers were compelled to give their statements under threat of termination and, therefore, under *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), these statements could not be used in a subsequent criminal proceeding against the officers. Appellants' App. at 59-63. The district court reviewed the statements *in camera* and found that Stover had failed to carry his burden of showing that the subpoena was unreasonable. *See* Fed.R.Crim.P. 17(c). On

January 7, 1994, the court denied Stover's motion to quash. The court ordered Stover to turn the subpoenaed material over to the Assistant United States Attorney with directions that the documents not be disclosed except to those persons authorized to receive grand jury material under Fed.R.Crim.P. 6. Stover immediately filed a motion to stay the order.

On January 11, 1994, Officer Nakamura filed a motion to intervene as a real party in interest and requested a stay and reconsideration of the court's order denying Stover's motion to quash the subpoena. Nakamura, like Stover, argued that the internal affairs statements were compelled and, therefore, *Garrity* required the court to limit and supervise the grand jury's use of the internal affairs file. Appellants' App. at 114-19. Additionally, five unnamed members of the APD, all of whom had been involved with the Klunck shooting and had given internal affairs statements, separately filed a "Motion for Intervention, Stay of Order and Reconsideration." The officers also argued that, under *Garrity,* their statements could not be disclosed to the grand jury.

The district court denied Stover's motion for a stay and on January 12, 1994, denied the motions of Nakamura and the five unnamed officers. The statements were turned over to the grand jury. Subsequently, Officer Nakamura was subpoenaed and testified before the grand jury in Albuquerque under a formal grant of immunity. *See* 18 U.S.C. § 6002. The record does not disclose that any of the APD officers were indicted by the grand jury. However, the jury had not been discharged at the time the district court entered its order.

■ Officer Nakamura and the five unnamed officers challenge the district court's denial of their motions to intervene,[1] claiming that the very act of disclosing a police offi-

---

1. The district court denied the officers' motions "to intervene, stay, and reconsider disclosure order of January 7, 1994." Appellants' App. at 126, 128. Persons situated as the officers are in this case; that is, those claiming that they will be injured by the disclosure of allegedly privileged material, generally have the right to intervene in a pending criminal matter. *See United States v. Feeney,* 641 F.2d 821, 824 (10th Cir.1981). Ac-

cordingly, our review considers the substantive bases of the court's denial of the officers' motions. Moreover, because the officers' motions were based upon the same substantive arguments as those propounded by Chief Stover in his motion to quash, we necessarily must review the substantive basis for the district court's denial of that motion as well.

cer's compelled statement to the grand jury constitutes a violation of the officer's Fifth Amendment right against self incrimination. In the alternative, they argue that the court erred in ordering production of the internal affairs statements without conducting a hearing to determine (1) the government's "compelling interest" in the statements, (2) that the statements sought bore a substantial relationship to the investigation, and (3) that the officers whose statements were sought were not targets of the investigation.

## DISCUSSION

### I.

■■■ Before reaching the merits of this appeal, we first address the basis of this court's jurisdiction. Our appellate jurisdiction under 28 U.S.C. § 1291 is limited to final decisions rendered by the district courts. The denial of a motion to quash a subpoena duces tecum is not a final decision, but is, rather, interlocutory in nature and thus not an appealable order. *United States v. Ryan,* 402 U.S. 530, 532, 91 S.Ct. 1580, 1581–82, 29 L.Ed.2d 85 (1971); *Cobbledick v. United States,* 309 U.S. 323, 329–30, 60 S.Ct. 540, 543–44, 84 L.Ed. 783 (1940); *In re Grand Jury Proceedings,* 857 F.2d 710, 711 (10th Cir.1988) (*"Company X"*).

The law is well settled that "one to whom a subpoena is directed may not appeal the denial of a motion to quash that subpoena but must either obey its commands or refuse to do so and contest the validity of the subpoena if he is subsequently cited for contempt on account of his failure to obey." *Ryan,* 402 U.S. at 532, 91 S.Ct. at 1582. The Supreme Court, however, has recognized an exception to this general rule. In *Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), the Court held that the district court's order denying Perlman's motion to quash a subpoena was immediately appealable because the third party to whom the subpoena was directed, a court clerk, would not have risked a contempt citation in order to preserve Perlman's privilege. *Id.* at 13, 38 S.Ct. at 419–20.

We addressed the parameters of the *Perlman* exception in *In re Grand Jury Proceedings, Vargas,* 723 F.2d 1461 (10th Cir.1983), holding that in order for a corporate client to appeal denial of its motion to quash a subpoena directed at its attorney, it had to "await a contempt citation against its attorney or· be able to prove that the attorney [would] produce the records rather than risk contempt." *Id.* at 1466; *see United States v. Nixon,* 418 U.S. 683, 691, 94 S.Ct. 3090, 3099, 41 L.Ed.2d 1039 (1974); *Company X,* 857 F.2d at 711–12.

In this case, however, Chief Stover, informed the officers that he intended to turn the internal affairs file over to the grand jury. Appellants' App. at 122. Thus, if denial of the officers' motions were not immediately appealable, they would have been "powerless to avert the mischief of the order." *Perlman,* 247 U.S. at 13, 38 S.Ct. at 419; *see In re Federal Grand Jury Proceedings, Cohen,* 975 F.2d 1488, 1491–92 (11th Cir.1992) (holding intervening police officers' claim within *Perlman* exception because attorney in that case not expected to risk contempt). We conclude, therefore, that, as to Nakamura and the five unnamed APD officers, the district court's denial of their motions to intervene, stay, and reconsider constituted a final appealable order. Accordingly, we have jurisdiction pursuant to 28 U.S.C. § 1291.

■■■ Our next threshold inquiry is whether this case is moot. "[A] federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Church of Scientology v. United States,* —— U.S. ——, ——, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992) (quoting *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895)); *see North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971); *In re Osborn,* 24 F.3d 1199, 1203 (10th Cir.1994). "[T]he existence of a live case or controversy is a constitutional prerequisite to the jurisdiction of the federal courts." *Beattie v. United States,* 949 F.2d 1092, 1093 (10th Cir.1991). Thus, if an event occurs during the pendency of an appeal which makes it impossible for the court to render the prevailing party "any effectual relief whatever," the appeal must be dis-

missed as moot. *Mills,* 159 U.S. at 653, 16 S.Ct. at 133 (quoted in *Church of Scientology,* —— U.S. at ——, 113 S.Ct. at 449).

The government contends that this case is moot because the internal affairs statements now have been turned over to the grand jury. In *Church of Scientology,* however, the Supreme Court rejected a similar argument, holding that the mere compliance with a summons—in that case, the turning over of audio tapes to the Internal Revenue Service—does not moot an appeal. The Court noted that although it was too late to provide full relief to the Church, a court could effectuate a partial remedy by ordering the IRS to return or destroy the tapes. *Church of Scientology,* —— U.S. at ——, 113 S.Ct. at 450. The government argues, however, that *Church of Scientology* is distinguishable from the present case because *Church of Scientology* involved a Fourth Amendment claim whereas this case involves a Fifth Amendment claim. According to the government, the Fourth Amendment privacy interest can be restored by the return of "papers and effects," whereas incriminating statements, once exposed to a grand jury, cannot be reclaimed. We find the distinction irrelevant in this case.

A federal court has the power to order improperly obtained materials—be they audio tapes possessed by the IRS or internal affairs files in the possession of a grand jury—returned or destroyed. Contrary to the government's argument, such an order would effectuate at least some modicum of relief,[2] and therefore, the case before us is not moot.

## II.

■ We turn now to the merits of the case. While a motion to quash generally is not an appealable order, we review the district court's order denying the officers' motions in this case for an abuse of discretion. *See Hancock v. City of Oklahoma City,* 857 F.2d 1394, 1395 (10th Cir.1988); *see also In re Grand Jury Proceedings,* 13 F.3d 1293, 1295 (9th Cir.1994). Whether denial of the officers' motions has caused a violation of the Fifth Amendment is a conclusion that we review de novo. *United States v. Thody,* 978 F.2d 625, 628 (10th Cir.1992), *cert. denied,* —— U.S. ——, 115 S.Ct. 273, 130 L.Ed.2d 190 (1994).

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself."[3] The Supreme Court has stated that "[t]he essence of this basic constitutional principle is 'the requirement that the State which proposes to convict and punish an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips.'" *Estelle v. Smith,* 451 U.S. 454, 462, 101 S.Ct. 1866, 1872, 68 L.Ed.2d 359 (1981) (quoting *Culombe v. Connecticut,* 367 U.S. 568, 581–82, 81 S.Ct. 1860, 1867, 6 L.Ed.2d 1037 (1961)); *see Miranda v. Arizona,* 384 U.S. 436, 460, 86 S.Ct. 1602, 1620, 16 L.Ed.2d 694 (1966).

■ In this case, the police officers argue that the very act of disclosing a compelled statement to the grand jury constitutes a per se violation of the declarant's Fifth Amendment privilege against self-incrimination. Thus, they contend, the district court committed constitutional error in ordering the internal affairs statements turned over to the grand jury. The government, on the other hand, argues that it is the grand jury's use of a compelled statement, not the mere disclosure of the statement, that offends the Con-

---

**2.** Obviously, the court could augment its order that the internal affairs files be returned or destroyed. For example, the court might order that the grand jury refrain from any use of the statements contained in the files. Moreover, if the taint were serious, the court could discharge the grand jury and empanel a new one. Fed. R.Crim.P. 6(c). We do not suggest, at this point, that any such remedies necessarily would be ordered, *see Church of Scientology,* —— U.S. at —— n. 6, 113 S.Ct. at 450 n. 6; *Sierra Club v. Yeutter,* 911 F.2d 1405, 1420 (10th Cir.1990)

(refusing to "invoke judicial relief based largely on speculation and hypotheticals.... The federal courts do not render advisory opinions."), but simply note that such additional, or other recourse may be available.

**3.** The privilege against self-incrimination applies to the states by the Fourteenth Amendment. *Malloy v. Hogan,* 378 U.S. 1, 6, 84 S.Ct. 1489, 1492–93, 12 L.Ed.2d 653 (1964).

stitution. The government's position is that if, and when, any officer is indicted, the officer will have the opportunity to challenge the indictment and the government will have the burden of proving that the indictment was obtained without the use of the officer's compelled statement or any evidence derived from that statement.[4]

Both the government and the police officers rely on a line of Supreme Court cases, beginning with *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), that address the application of the Fifth Amendment privilege to public employees and public officers. *See, e.g., Lefkowitz v. Cunningham*, 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977); *Lefkowitz v. Turley*, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973); *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation*, 392 U.S. 280, 284–85, 88 S.Ct. 1917, 1919–20, 20 L.Ed.2d 1089 (1968); *Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); *Spevack v. Klein*, 385 U.S. 511, 516, 87 S.Ct. 625, 628–29, 17 L.Ed.2d 574 (1967).

Justice Powell, sitting by designation with the Fourth Circuit, recently articulated the import of the *Garrity* line of cases: " 'If the State presents a person with the "Hobson's choice" of incriminating himself or suffering a penalty, and he nevertheless refuses to respond, the State cannot constitutionally make good on its threat to penalize him.' " *Wiley v. Doory*, 14 F.3d 993, 996 (4th Cir. 1994) (quoting *Minnesota v. Murphy*, 465 U.S. 420, 443, 104 S.Ct. 1136, 1151, 79 L.Ed.2d 409 (1984) (Marshall, J., dissenting)); *see Turley*, 414 U.S. at 77, 94 S.Ct. at 322; *Sanitation Men*, 392 U.S. at 284, 88 S.Ct. at 1919–20; *Gardner*, 392 U.S. at 277–78, 88 S.Ct. at 1915–16. " 'Conversely, if the threatened person decides to talk instead of asserting his privilege, the State cannot use his admissions against him in a subsequent criminal prosecution.' " *Wiley*, 14 F.3d at 996 (quoting *Murphy*, 465 U.S. at 443, 104 S.Ct. at 1151 (Marshall, J., dissenting)); *see Garrity*, 385 U.S. at 500, 87 S.Ct. at 620.

■ In a case such as this, therefore, the Fifth Amendment operates to restrict the government's conduct in two ways. First, a statement may not be *obtained* in violation of the Constitution. Thus, the State may not insist that public employees "waive their Fifth Amendment privilege against self-incrimination and consent to the use of the fruits of the interrogation in any later proceedings brought against them." *Turley*, 414 U.S. at 84–85, 94 S.Ct. at 326. On the other hand, police officers, being public employees, "subject themselves to dismissal if they refuse to account for their performance of their public trust, after proper proceedings, which do not involve an attempt to coerce them to relinquish their constitutional rights." *Sanitation Men*, 392 U.S. at 285, 88 S.Ct. at 1920. Thus, a police officer may be terminated for refusing to answer questions "specifically, directly, and narrowly relating to the performance of his official duties," so long as he is

---

4. In support of this argument, the government relies on *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), where·the Court held that the use and derivative-use immunity provided the appellant under 18 U.S.C. § 6002 was coextensive with the protections of the Fifth Amendment. *Id.* at 461–62, 92 S.Ct. at 1665–66. The Court went on to note that a person granted immunity under the statute and subsequently prosecuted, "need only show that he testified under a grant of immunity in order to shift to the government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources." *Id.* Thus, it has become common for the district court to hold a *"Kastigar hearing"* wherein the government must carry this burden of proving that its evidence against the defendant derives entirely from sources other than the defendant's immunized statements, or that the use of any evidence tainted by the statements was harmless beyond a reasonable doubt. *See United States v. Koon*, 34 F.3d 1416, 1430–32 (9th Cir. 1994); *United States v. Schmidgall*, 25 F.3d 1523, 1528–29 (11th Cir.1994); *United States v. Bartel*, 19 F.3d 1105, 1111–12 (6th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 113, 130 L.Ed.2d 60 (1994); *United States v. North*, 920 F.2d 940, 942 (D.C.Cir.1990), *cert. denied*, 500 U.S. 941, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991); *United States v. Garrett*, 797 F.2d 656, 664 (8th Cir. 1986); *United States v. Beery*, 678 F.2d 856, 860–62 (10th Cir.1982). "[A] trial court may hold a *Kastigar* hearing pre-trial, post-trial, mid-trial (as evidence is offered), or it may employ some combination of these methods. A pre-trial hearing is the most common choice." *United States v. North*, 910 F.2d 843, 854 (D.C.Cir.), *modified on reh'g*, 920 F.2d 940, 942 (D.C.Cir.1990), *cert. denied*, 500 U.S. 941, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991).

not "required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself." *Gardner,* 392 U.S. at 278, 88 S.Ct. at 1916; *accord Hester v. Milledgeville,* 777 F.2d 1492, 1495–96 (11th Cir.1985); *Gulden v. McCorkle,* 680 F.2d 1070, 1074 (5th Cir.1982) ("[I]t is the compelled answer *in combination with* the compelled waiver of immunity that creates the Hobson's choice for the employee."), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983).

The second restriction placed on the government in this context is a complete prohibition on the *"use* in subsequent criminal proceedings of statements obtained under threat of removal from office, and … it extends to all, whether they are policemen or other members of our body politic." *Garrity,* 385 U.S. at 500, 87 S.Ct. at 620 (emphasis added). Thus, police officers, as public employees "may be compelled to respond to questions about the performance of their duties but only if their answers cannot be used against them in subsequent criminal prosecutions." *Turley,* 414 U.S. at 79, 94 S.Ct. at 323. Moreover, the protections afforded the officers in such a case are substantial: "This total prohibition on use provides a comprehensive safeguard, barring the use of compelled testimony as an 'investigatory lead,' and also barring the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures." *Kastigar,* 406 U.S. at 460, 92 S.Ct. at 1664–65.

This case, however, is not directly controlled by either of these two lines of analysis. The officers' internal affairs statements were neither obtained nor have they been used in violation of the Constitution. No officer was required to "waive his immunity" with respect to the use of his answers, or evidence derived from those answers, in a subsequent criminal prosecution. *See Gardner,* 392 U.S. at 278, 88 S.Ct. at 1916; *see also Kastigar,* 406 U.S. at 460–61, 92 S.Ct. at 1664–65; *Garrity,* 385 U.S. at 500, 87 S.Ct. at 620. In fact, the officers were advised by the internal affairs unit that department policy did not require them to waive their "Fifth Amendment rights under the Constitution or laws of the United States or the State of New Mexico." Appellants' App. at 19.[5] Thus, the officers' statements, though compelled under threat of termination, were not obtained in violation of the Constitution. *Sanitation Men,* 392 U.S. at 284, 88 S.Ct. at 1919–20.

Likewise, the officers' statements have not been used in violation of the Constitution. As previously discussed, if the government does not force a police officer to waive the privilege against self-incrimination, the Constitution does not bar the government from compelling the officer to "answer questions specifically, directly, and narrowly relating to the performance of his official duties." *Gardner,* 392 U.S. at 278, 88 S.Ct. at 1916.[6] Rather, the Constitution is violated only when the compelled statement, or the fruit of that statement, is used against the officer in a subsequent criminal proceeding. *Garrity,* 385 U.S. at 500, 87 S.Ct. at 620. Garrity's protection, therefore, acts to immunize these compelled statements, as it pro-

---

**5.** While this case does not require us to decide whether the government must affirmatively advise a police officer who is undergoing an internal affairs interview that the officer is not being forced to waive his or her Fifth Amendment rights, other circuits arguably have adopted such a requirement. *See Confederation of Police v. Conlisk,* 489 F.2d 891, 894–95 & n. 4 (7th Cir. 1973) ("[B]y advising the officers that their statements, when given under threat of discharge, cannot be used against them in subsequent criminal proceedings, the IAD is not 'granting' immunity from prosecution; it is merely advising the officers of the constitutional limitations on any criminal prosecution should they answer."), *cert. denied,* 416 U.S. 956, 94 S.Ct. 1971, 40 L.Ed.2d 307 (1974); *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation,* 426 F.2d 619, 626–

27 (2d Cir.1970) ("[I]f a public officer is asked about performance of his official duties and is not required to waive immunity, the privilege is not a bar to his dismissal for refusal to answer.... 'After proper proceedings' means proceedings, such as those held here, in which the employee is asked only pertinent questions about the performance of his duties and is duly advised of his options and the consequences of his choice."), *cert. denied,* 406 U.S. 961, 92 S.Ct. 2055, 32 L.Ed.2d 349 (1972); *see also* Byron L. Warnken, *The Law Enforcement Officer's Privilege Against Self-Incrimination,* 16 U.Balt.L.Rev. 452 (1987).

**6.** The officers do not contend that the questioning was broad or overreaching.

hibits their subsequent use against the officer so as not to offend the Fifth Amendment privilege.

While it is true that indictments may be returned in this matter against APD officers whose compelled statements have been considered by the grand jury, that eventuality has not yet been realized. It is axiomatic that the Fifth Amendment protects against "real dangers, not remote and speculative possibilities." *Zicarelli v. New Jersey Investigation Comm'n,* 406 U.S. 472, 478, 92 S.Ct. 1670, 1675, 32 L.Ed.2d 234 (1972). Thus, the present case is analogous to *United States v. Peister,* 631 F.2d 658 (10th Cir.1980), *cert. denied,* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981), where the appellant, who proceeded pro se at trial and was convicted of Internal Revenue Code violations, claimed that completion of a financial disclosure form, for the purpose of obtaining appointed counsel, would have violated his privilege against self-incrimination. Noting the absence in the record of any evidence that the required disclosure would in fact have jeopardized his Fifth Amendment privilege, we rejected his claim:

> We hold defendant should not be relieved of this burden when any conflict with the Fifth Amendment right is speculative and prospective only. The time for protection will come when, if ever, the government attempts to use the information against the defendant at trial. We are not willing to assume that the government will make such use, or if it does, that a court will allow it to do so.

*Id.* at 662; *see United States v. Schmidt,* 816 F.2d 1477, 1481 & n. 3 (10th Cir.1987); *accord Marchetti v. United States,* 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968) (incrimination resulting from a compelled statement must be "substantial and 'real,' not merely trifling or imaginary, hazards of incrimination").

■ As in *Peister,* at this point in the proceedings, we simply have no way of know-

ing whether the statements have been, or will be, used in a constitutionally proscribed manner. If an officer, whose compelled statement has been considered by the grand jury, ultimately is indicted, that officer will be able to challenge the indictment and the government will be required to prove that its evidence derives entirely from legitimate sources or that the grand jury's exposure to the officer's statement was harmless. *Kastigar,* 406 U.S. at 460, 92 S.Ct. at 1664–65; *Beery,* 678 F.2d at 863; *see United States v. Pino,* 708 F.2d 523, 531 (10th Cir.1983).

Moreover, it is significant to note the procedural protections the government has in place. "When immunized statements are received in a case handled by the Criminal Section of the Civil Rights Division, personnel from the Criminal Section sanitize the reports by redacting statements and fruits of statements by the target of the investigation which could violate the standards of use immunity if used against the individual who made the statement." Appellee's Br. at 20; *see United States Attorneys' Manual* § 9–23.400; *see also United States v. Crowson,* 828 F.2d 1427, 1429–32 & n. 4 (9th Cir.1987), *cert. denied,* 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988). Thus, incriminating statements are, in theory, never seen by either the government attorney handling the case or the grand jury.

■ Furthermore, we expect that attorneys appearing before the federal courts will demonstrate the highest level of professional responsibility. Government prosecutors are held to an even higher standard.[7] Thus, we trust that government attorneys, guided by ethical and prudential considerations as well as department policy, will strictly safeguard the Fifth Amendment rights of police officers under investigation.[8]

Nevertheless, police officers whose statements are subpoenaed are not required to "rely upon the general assurances of the government that they [are] not targets of the grand jury investigation." Appellants' Br. at

---

**7.** *See Model Rules of Professional Conduct* Rule 3.8 cmt. 1.

**8.** A second factor motivating government attorneys to sedulously protect against the improper

use of compelled statements is the desire to see that indictments, once obtained, are not dismissed for violations of the defendant's constitutional rights.

24. An officer who has been compelled to provide an internal affairs statement and who subsequently is indicted, much like a person compelled to testify before a grand jury under a formal grant of immunity, "is not dependant ... upon the integrity and good faith of the .prosecuting authorities." *Kastigar*, 406 U.S. at 460, 92 S.Ct. at 1665. We apprehend no qualitative distinction between the protections afforded a police officer who has been compelled to answer direct, specific, and narrowly tailored questions in the context of an internal affairs interview, and a witness whose grand jury testimony is immunized under 18 U.S.C. § 6002.[9] Thus, the *Kastigar*-style hearing to which the officer is entitled in any further proceeding provides an adequate safeguard against violation of his Fifth Amendment rights. *See United States v. Kember*, 648 F.2d 1354, 1361–63 (D.C.Cir.1980).

In sum, the officers' generalized fear that the grand jury may consider a police officer's compelled internal affairs statement and return an indictment against the officer on that basis is speculative at most. It certainly does not provide a sufficient basis for asserting a blanket claim of Fifth Amendment privilege in keeping the internal affairs statements from the grand jury. *See United States v. Clark*, 847 F.2d 1467, 1474–75 (10th Cir.1988); *Borgeson v. United States*, 757 F.2d 1071, 1073 (10th Cir.1985) (per curiam). Moreover, the protections already in place guarantee that the constitutional rights of law enforcement personnel will remain inviolate and that police officers will not be "relegated to a watered-down version of constitutional rights." *Garrity v. New Jersey*, 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 (1967). Accordingly, we hold that the mere disclosure to the grand jury of a police officer's potentially incriminating compelled statement does not constitute a violation of the officer's Fifth Amendment privilege against self-incrimination.

## III.

The officers next contend that, even if disclosure of the statements to the grand jury does not constitute a per se violation of the Fifth Amendment, this court nevertheless must exercise its supervisory authority over the grand jury proceedings in order to safeguard the constitutional rights implicated.[10] The officers argue that the district court, prior to ordering the disclosure of compelled internal affairs statements to the grand jury, must hold a hearing in which the government would be required to demonstrate (1) a "compelling need" for the statements, (2) a substantial relationship between the statements and the grand jury's investigative mission, and (3) that none of the officers whose statements are sought are targets of the grand jury investigation. According to the officers, this process not only would insure the protection of a police officer's Fifth Amendment privilege against self-incrimination, but it also would prevent the inevitable chilling effect of a grand jury's carte.blanch access to compelled internal affairs statements.

As discussed above, adequate safeguards are in place to insure that a police officer's privilege against self-incrimination is not violated. Thus, what the officers seek is not remedy, but prophylaxis. We are not asked to exercise our supervisory power in fashioning a remedy necessary to safeguard a constitutional right generally. *See United States v. Calandra*, 414 U.S. 338, 343–44, 94 S.Ct. 613, 617–18, 38 L.Ed.2d 561 (1974). Rather, we are asked to fashion an ongoing process, adding an additional layer of protection which would insure that the constitution-

---

9. In a case such as this, we presume that a police officer's sworn grand jury testimony would be consistent with the statements the officer made in the internal affairs interview. Thus, there is no reasoned basis for immunizing the information obtained from Officer Nakamura, who gave an internal affairs statement and who also testified before the grand jury, while not affording the same immunization to the information obtained from the other officers, who gave statements but who have not testified.

10. The government contends that the officers' failure to raise this argument below should preclude review of the issue on appeal. *See In re Grand Jury Subpoena Duces Tecum*, 697 F.2d 277, 280–81 n. 3 (10th Cir.1983). We agree with the government on this point, but as discussed below, dismiss the officers' claim on alternate grounds.

al violation does not occur in the first instance. *See Michigan v. Tucker,* 417 U.S. 433, 444, 94 S.Ct. 2357, 2363–64, 41 L.Ed.2d 182 (1974); *Miranda v. Arizona,* 384 U.S. 436, 467, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966).

We decline to do so. The fashioning of a process pursuant to our "supervisory powers" would necessarily presuppose the insufficiency of the remedy set forth in Part II of this opinion. *See Kastigar,* 406 U.S. at 459–60, 92 S.Ct. at 1664–65. The remedy, however, is adequate and the Constitution demands nothing more.

The judgment of the district court is AFFIRMED.