**In re Alberto DUQUE, Debtor.**

**Bankruptcy No. 83–00903–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida.

Dec. 13, 1994.

Benedict P. Kuehne, c/o Sale & Kuehne, P.A., Miami, FL, for Sandy Karlan and Benson Weintraub.

Roma W. Theus, II, Robert J. Capko, Holland & Knight, Fort Lauderdale, FL, Ronald G. Neiwirth, Semet, Lickstein, Morgenstern, Berger, Friend, Brooke & Gordon, Coral Gables, FL, Joel Weiss, c/o Esanu, Katsky, Kornis & Siger, New York City, for Paul Nordberg, Creditor–Trustee.

Carlos Rodriguez, pro se.

Sandy Karlan, Miami, FL, for Alberto Duque.

## OPINION AND ORDER COMPELLING SANDY KARLAN, ESQ., BENSON WEINTRAUB, ESQ. AND CARLOS RODRIGUEZ TO COMPLY WITH DISCOVERY AND DENYING MOTION TO QUASH

A. JAY CRISTOL, Chief Judge.

THIS CAUSE was heard on October 12, 1994 on remand from the United States District Court for the Southern District of Florida.

### Background

These proceedings are conducted pursuant to an Order of Remand (the "Remand Order") entered April 29, 1994 by the District Court (Moore, J.), relating to subpoenas served on three of the Debtor's counsel in connection with this case. As is set forth in more detail below Judge Moore has resolved the respondents' substantive objections to the subpoenas. This Court's mandate is to enforce the subpoenas, in keeping with the District Court's ruling.

Paul C. Nordberg (hereinafter referred to as the "Trustee"), acts as trustee in connection with the bankruptcy proceedings of Alberto Duque ("Duque"). Duque filed bankruptcy in May, 1983. Ultimately Duque was convicted of fifty-nine counts of mail and wire fraud in connection with the activities which precipitated his bankruptcy filing. A majority of the counts for which Duque was convicted resulted from an orchestrated and com-

plex scheme by which Duque and/or businesses controlled by Duque falsified bills-of-lading purporting to document the existence of large inventories of green coffees in transit, and/or accounts receivable, which were pledged as collateral for large bank loans. The bulk of the collateral (i.e. the coffee and receivables) purportedly pledged to the lenders was non-existent.

Duque received a fifteen year sentence in federal prison. Duque exhausted all appeals in connection with the criminal proceedings; and his conviction is final. The victims of Duque's frauds suffered losses in excess of $100,000,000.

The District Court, in sentencing Duque, declined to order restitution. In so acting the District Court made specific reference to the pendency of Duque's bankruptcy proceedings and the complexity of same. The District Court made clear that it was relying upon the Bankruptcy Court and the bankruptcy proceedings to maximize the recoveries for the benefit of Duque's victims. The District Court's reliance on Duque's bankruptcy proceedings as the avenue for recovery by the victims of Duque's criminal acts imbues these proceedings with a particular importance, and makes it all the more crucial that Duque comply fully and appropriately with the law relating to the bankruptcy proceedings which he saw fit to commence.

More than three years ago, the Trustee served subpoenas on three attorneys[1] who either currently represent or did represent Duque during the pendency of these bankruptcy proceedings. The respondents moved to quash the subpoenas. That motion was denied by this Court before a visiting judge. The respondents appealed to the District Court. The District Court (Atkins, Sr. J.) reversed and remanded. This Court quashed the subpoenas on the initial remand, in a decision premised on concerns as to possible infringement on Duque's rights. The Trustee appealed to the District Court. The District Court (Moore, J.) reversed and

remanded. In the Remand Order the District Court clearly and firmly rejected the essence of the respondents' various affirmative defenses (i.e. the attorney-client privilege, the work-product doctrine, Duque's Sixth Amendment rights and Duque's Fifth Amendment rights). As to those affirmative defenses the Remand Order is the law in this case.

■ It is clear and undisputed that the Trustee has served these subpoenas, which seek information regarding the amount(s) and source(s) of payments of fees and/or expenses to the several attorneys in connection with their representations of Duque, in an effort to locate possible assets of Duque. Despite the contentions of Duque, the subpoenas cannot reasonably be read or construed to seek privileged information as to Duque's communications with his counsel; they seek non-privileged financial information.

Based on prior statements of Duque, the Trustee believes that the total payments to the three lawyers exceeded $400,000.00. Now, the respondent attorneys have moved on the second remand to quash the subpoenas on essentially the same basis the District Court rejected in the Remand Order.

In May of 1993, during the pendency of this matter, Duque escaped federal custody and fled to his native Colombia. Duque is currently a fugitive and subject of a U.S. arrest warrant in connection with his escape and unlawful flight.

### DISCUSSION

At the outset, this Court observes that Duque arguably has abandoned his right to be heard on the merits in this case. First, Duque is currently an escapee and a fugitive from justice. Second, there is a litany of well established law to the effect that by the act of escaping and remaining a fugitive, a litigant in a civil matter related to a criminal

---

1. The individuals served are: (i) Benson A. Weintraub, Esq., an attorney specializing in post-conviction relief for convicted individuals; (ii) Sandy Karlan, Esq., an attorney maintaining a bankruptcy practice before this Court; and (iii) Carlos Rodriguez, a former attorney who represented Duque during a portion of the pendency of Duque's bankruptcy proceedings. Rodriguez has, himself, been convicted of crimes relating to money laundering and is no longer a member of the bar.

proceeding abandons his rights in connection with the civil litigation.[2] Additionally, the Remand Order clearly directed that Duque would provide the Trustee with redacted documents. Counsel for Weintraub and Karlan acknowledged at the October 12, 1994 hearing that they could have produced redacted documents to the Trustee but chose not to.

Notwithstanding the above, the Court shall rule on and dispose of the objections posed by Duque:

*Duque's Affirmative Duty to Disclose:*

■ It is well-established that payments made to attorneys representing a debtor are inherently subject to disclosure and scrutiny. Section 329 of the Bankruptcy Code states in part:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329.

■ The legislative history of this section makes clear that, among the reasons why Congress included this unambiguous provision, was the realization that payments to a debtor's attorneys provide serious potential for evading the creditor protection provisions of the bankruptcy laws. [House Report No. 95–595, 95th Cong., 1st Session, 329 (1977) and Senate Report No. 95–989, 95th Cong., 2d Session, 39–40 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787].

Case law demonstrates that courts have recognized the reality that payments to attorneys, undisclosed and not scrutinized by the court, are among the mechanisms which unscrupulous debtors are prone to use to hide their assets from creditors. *See e.g., In re Rheuban*, 121 B.R. 368, 24 C.B.C.2d 1083 (B.Ct.C.D.Cal.1990); *In re Senior G & A Operating Co.*, 97 B.R. 307, 20 C.B.C.2d 765 (B.Ct.W.D.La.1989).

Here we have abundant red flags as to possible diversion of the Debtor's assets with the intent to defraud his victims/creditors. They include: (1) Duque's criminal conviction for multiple counts of fraud; (2) Duque's escape and flight; and (3) this Court's factual determination that Duque testified untruthfully before this Court in May, 1993, prior to his escape and unlawful flight.

The factors listed above are all in addition to the fact that the Trustee holds more than $40,000,000 (principal amounts) of final money judgements, primarily fraudulent conveyance judgments premised on determinations on the merits that Duque did divert funds and/or assets from his creditors. Included in these judgments is a judgment for $9,950,000 (principal amount), issued by this Court, in connection with Duque's diversions of funds for his own benefit to Colombia, at or about the time Duque filed his bankruptcy petition. *See Alberto Duque Rodriguez, Debtor, John Paul Murphy, Trustee, Plaintiff v. Alberto Duque Rodriguez*, Case no. 83–00903–BKC–TCB Chapter 7.

In addition, Rule 2004(b) of the Federal Rules of Bankruptcy Procedure provides that an examination may be made of an entity in relation to a bankruptcy proceeding as to:

... the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.

■ Given the lack of any applicable privilege, as is determined in the Remand Order, it is apparent that the examination contemplated by the Trustee falls squarely

---

2. *See, e.g., United States v. Eng*, 951 F.2d 461 (2d Cir.1991) ("a fugitive from justice may not use the resources of the civil legal system while disregarding its lawful orders in a related criminal action."); *Conforte v. Commissioner of Internal Revenue*, 692 F.2d 587, 589 (9th Cir.1982) (emphasizing that the disentitlement doctrine applies in civil cases and "should apply with **greater** force in civil cases when an individual's liberty is not at stake"); *United States v. One Lot of U.S. Currency Totalling $506,537*, 628 F.Supp. 1473 (S.D.Fla.1986); *United States v. Sudthisa–Ard*, 17 F.3d 1205 (9th Cir.1994).

within the aegis of the rule. Discovery of, and recovery of, the Debtor's assets are among the Trustee's principal duties as bankruptcy trustee. This duty is heightened when the bankruptcy and resulting losses to victims and creditors was precipitated by criminal conduct such as Duque committed.

### Duque's Affirmative Defenses:

The respondent counsel raise a number of affirmative defenses, seeking to quash to subpoenas:

A. *Attorney–Client Privilege:* Duque's counsel has argued that the information sought by the Trustee infringes upon the attorney-client privilege. The Remand Order has firmly rejected this objection (see Remand Order at page 7).

 A fair reading of the information requested by the Trustee discloses that all the Trustee seeks is financial information. How much were the attorneys paid? Who paid them? What mechanisms were used to fund the payments? Quite clearly the Trustee hopes that this information will point to possible assets of Duque which were not disclosed to the Trustee by the Debtor. It is well settled in this circuit that information relating narrowly to fee matters is not privileged. *See e.g. United States v. Leventhal,* 961 F.2d 936 (11th Cir.1992); *In re Grand Jury Matter No. 91–01386,* 969 F.2d 995, 997 (11th Cir.1992); *In re Grand Jury Proceedings in Matter of Freeman,* 708 F.2d 1571, 1575 (11th Cir.1983) (per curiam). Duque's attorneys have argued that the so-called "last link" exception to this general rule applies in these proceedings. As Judge Moore set forth in the Remand Order a necessary aspect of the "last link" doctrine is that the fee disclosure would "give the identity of a previously undisclosed client/suspect." Obviously the identity of Duque is known to all, prior to the discovery sought by the Trustee. The "last link" exception is inapplicable.

 In keeping with the District Court's ruling and for the reasons set forth above, complying with the subpoena at issue would not violate attorney-client privilege.

 B. *Work Product Doctrine or Privilege:* Duque's attorneys urge that compliance with the subpoenas would violate the work product doctrine. Again, the District Court has rejected the argument (See Remand Order at page 8).

Reduced to their basic elements the inquiries in the subpoena seek nothing more than a clear picture as to: (i) what the attorneys were paid to represent Duque; (ii) who paid them; (iii) how they were paid; and (iv) did the attorneys provide any assistance/advice, etc., to Duque or persons acting on Duque's behalf as to how the payments might be made more difficult to trace? None of these items is properly "work product." The first three items are, in no way, work product. The fourth area of inquiry, as to which there is no particular reason to believe any affirmative responses are indicated, would indicate (if answered affirmatively, with specifics) that such counsel were assisting Duque (perhaps unwittingly) in what would appear to be bankruptcy fraud. Clearly such efforts, had they occurred, would not be entitled to a claim of work-product doctrine or privilege.

The information sought in the subpoena does not infringe upon the work product doctrine.

C. *Duque's Sixth Amendment Right:* Duque's counsel argue that the actions of the Trustee will have the inevitable effect of infringing upon Duque's Sixth Amendment right to counsel. As the District Court observed in rejecting this contention, they miss the point, at several levels (See Remand Order at pages 8–10):

(i) The Supreme Court has held that the Sixth Amendment right to counsel of one's choice is not absolute:

Whatever the full extent of the Sixth Amendment's protection of one's right to retain counsel of one's choosing, that right does not go beyond 'the individual's right to spend his own money to obtain the advice and assistance of.... counsel.' A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that the defendant will be able to retain the attorney of his choice.

*Caplin & Drysdale v. United States,* 491 U.S. 617, 626, 109 S.Ct. 2646, 2652, 105 L.Ed.2d 528 (1989).

 It was determined by this court, on the merits in a proceeding in which Duque participated and which became final many years ago, that Duque's estate was insolvent. Duque has no palpable "equity" in this estate. Thus the assets and/or funds in the estate are properly due to the estate; they are **not** Duque's. Persons in possession of any of Duque's assets hold those assets and/or funds in trust for the creditors of the estate, the entities and individuals whom Duque has defrauded. Counsel here are no exception. Duque has no right to spend the estate's assets, which assets are ultimately the property of the victims of his crimes and frauds, on lawyers whose engagements are in the nature of defending Duque in his individual capacity.

 (ii) The Sixth Amendment right attaches only after the criminal judicial process has begun. There is no showing, and this Court is unaware of any evidence, to the effect that Duque was subject to any *pending* criminal judicial process during the bulk of the time this subpoena dispute has been pending. Insofar as this Court is aware all of the criminal prosecutions from Duque's bill-of-lading-scam had been completed, including all appeals, and Duque had been sentenced. While Duque is today arguably and presumptively subject to some criminal proceeding for his crime of escape, in May of 1993, it seems frivolous to posit that Duque's unilateral act of escape in 1993 can deprive the Trustee of discovery to which the Trustee would otherwise be entitled.

 (iii) Finally, the Eleventh Circuit Court of Appeals has held that a Sixth Amendment claim is not ripe for adjudication, unless and until it appears that disclosure of the information will sever the relationship between attorney and client and the client cannot obtain other counsel. *In re Grand Jury Proceedings 88–9 (MIA),* 899 F.2d 1039, 1044 (11th Cir.1990); *In re Grand Jury Proceedings (Chesnoff),* 13 F.3d 1293, 1296 (9th Cir.1994). Here there has been no assertion, much less any showing, that com-

pliance with the subpoenas will actually deprive Duque of counsel.

D. *Duque's Fifth Amendment Rights:* Duque's Fifth Amendment rights are not at issue in this proceeding. The District Court has rejected this contention (See Remand Order at pages 10–11).

 Duque clearly has had adequate notice of the proceedings and has been presented with the opportunity to be heard. It was Duque's unilateral decision to escape and make himself a fugitive. Prior to his escape this Court was, in fact, very solicitous of Duque's right to be heard on all issues. Sometimes Duque participated in hearings, via phone, from prison. Sometimes Duque appeared in court, in person.

 In addition, because the subpoenas seek non-privileged information and documents from Duque's attorneys, and not from Duque, they cannot possibly implicate Duque's right against personal self-incrimination.

 E. *The Provisions of the Financial Privacy Act:* At the hearing held on October 12, 1993, respondent's counsel raised the argument that the Financial Privacy Act of 1978 limits Trustee's right of discovery. It is well established that the Financial Privacy Act of 1978 restricts only federal agencies. *See Clayton Brokerage Co., Inc. v. Clement,* 87 F.R.D. 569 (D.Maryland 1980); *Nichols v. Council on Judicial Complaints,* 615 P.2d 280 (Okl.1980).

 F. *The Economic Risk to the Attorneys:* At the hearing held on October 12, 1994 counsel for Duque's attorneys argued that it would be unfair to provide the information sought, as such information might provide the Trustee with a basis for seeking recovery of the fees and expenses paid to Duque's attorneys. It appears that the respondents have belatedly focussed on Section 329(b) of the Code. That argument, however, is of no moment in determining whether the Trustee is entitled to discovery.

Assuming, *arguendo,* that the Trustee would uncover a basis to claim recovery of the funds paid to Weintraub and/or Karlan and/or Rodriguez via the discovery sought,

such hypothesis would be no basis to deny discovery. Each of the respondents on the subpoenas is a trained lawyer. Without prejudging the matter on the merits, this Court observes that, if it turns out that any or all of the lawyers are not entitled to keep the funds they received, that would simply evidence that such attorneys somehow erred and failed to conduct themselves in a manner which would entitle them to legally retain the funds. Denying discovery on that hypothesis would render Section 329 of the Code totally ineffective: any attorney concerned that he or she might not be entitled to keep payments from or on behalf of a debtor would simply be motivated to orchestrate a discovery stalemate, as has occurred here, frustrating the effort to discover what he or she was paid and by whom.

■ G. *Balancing the Burdens and Benefits of Compliance with the Subpoenas:* The District Court, quoting from Sr. Judge Atkins' ruling on the first appeal (*see In re Duque*, 134 B.R. 679, 686 (S.D.Fla.1991)) directed that this Court "take into account [Nordberg's] need for the information and the availability of the information from other sources ..." This mandate of the District Court effectively directed Duque to a potentially effective affirmative defense. We observe that, in two years since Judge Atkins's holding, Duque has failed to proffer *any* expert evidence or testimony to the effect that the Trustee has effective avenues of discovery of this information elsewhere. The Trustee has produced a qualified expert witness, Professor Keith Rosenn of the University of Miami Law School, who testified to the effect that the Trustee lacked access to any effective discovery mechanism in Colombia. Additionally, this Court observes that the appropriate "balancing" of the benefits and burdens is properly tilted, in favor of the Trustee and against Duque, by the existence of Section 329 of the Code. At the foundation the relevant bankruptcy statute dictates that Duque and his various counsel should have, voluntarily, made precisely the sort of disclosure which the Trustee has so long sought. To vitiate this legislative mandate, Duque would have to point to an alternative manner in which the Trustee could have assembled the analogous information with little or no effort; because the Bankruptcy Code as written dictates that the Trustee should have been able to get the bulk of what he seeks by a simple review in the Clerk's Office of this Court of the Section 329 filings which Duque's various counsel should have made with this court several years ago.

H. *Relating to the Objections to Specific Questions:* This Court has reviewed each specific objection/comment as to specific questions put forth by the Trustee as such objections were filed by Benedict B. Kuehne, Esq., on October 10, 1994. The objections are largely conclusory statements, many of which fly in the face of the Remand Order. For example, the Remand Order makes clear, at page 7, that the financial aspects (the fee arrangement) for the several respondents' representation of Duque, are not privileged and can be discovered. Among the most crucial inquiries posed by Trustee are questions 8 through 13. Those questions seek the specific financial information and data which might assist Trustee in his ongoing search for putative assets of Duque. Respondents' objections to the Trustees questions # 8—# 13 *are* nothing more than an effort to use slightly different words to state the same objection which the District Court has already rejected.

### CONCLUSION AND ORDER

· ■ Respondents have failed to clearly articulate any bases for objecting to or quashing the subpoenas which have not already been rejected by the District Court. Accordingly, the Court enters the following ORDER:

1. As to the individual questions and inquiries set forth in the Trustee's subpoenas, the Court rules as follows:

A. As to question # 1—No objection raised.

B. As to question # 2: Respondents' objection overruled. This inquiry simply seeks to establish the point of origination of each lawyer's representation. It does not intrude on any true or substantive element of attorney-client privilege. Respondents shall answer within 10 days of entry of this Order.

C. As to question # 3: Respondents shall produce to the Court, within five days of entry of this Order, full copies of any engagement letters with Mr. Duque and/or entities or individuals acting on Mr. Duque's behalf. If there are any portion(s) of any such putative letters which respondents believe should be redacted, full copies of the engagement letter(s) along with an explanation of the basis for such proposed redaction(s) shall accompany the documents. A copy of any memorandum or the like, asserting any alleged basis for redaction shall be served on counsel to the Trustee, concurrent with service on the court. If no filing is made as per the immediately preceding directions, respondents shall answer question # 3 within 10 days of entry of this Order.

D. As to question # 4: Respondents shall answer the question within 10 days of the entry of this Order.

E. As to question # 5: Respondents shall answer the question within 10 days of entry of this Order.

F. As to question # 6: Respondents shall answer the question within 10 days of entry of this Order.

G. As to question # 7: Respondents shall answer the question within 10 days of entry of this Order.

H. As to question # 8: Respondents shall answer the question within 10 days of entry of this Order.

I. As to question # 9: Respondents shall answer the question within 10 days of entry of this Order.

J. As to question # 10: Respondents shall answer the question within 10 days of entry of this Order.

K. As to question # 11: Respondents shall answer the question within 10 days of entry of this Order.

L. As to question # 12: Respondents shall answer the question within 10 days of entry of this Order.

M. As to question # 13: Respondents shall answer the question within 10 days of entry of this Order.

N. As to question # 14: Respondents shall answer the question within 10 days of entry of this Order.

O. As to question # 15: Respondents shall answer the question within 10 days of entry of this Order.

P. As to question # 16: Respondents shall answer the question within 10 days of entry of this Order.

Q. As to question # 17: Respondents shall answer this question within 10 days of entry of this Order, unless Respondents' answers to question # 8 have been made in full and are so detailed as to allow the Trustee to fully identify the payment mechanisms used (i.e. identity of remitter, identity of financial institution or equivalent used to make payments, identity of account number(s), address for remitting bank or financial institution(s), date(s) of payment(s), precise amount(s) remitted, etc.) to pay each and every payment or transfer to each respondent.

R. As to question # 18: Respondents shall answer the question within 10 days of entry of this Order.

S. As to question # 19: Respondents shall answer the question within 10 days of entry of this Order.

T. As to question # 20: Respondents shall answer the question within 10 days of entry of this Order.

U. As to question # 21: Respondents shall answer the question within 10 days of entry of this Order.

V. As to question # 22: Respondents shall either answer the question within 10 days of entry of this Order, or proffer to this Court, within 5 days of entry of this Order, a specific assertion as to what portion(s) of the putative complete answer to this question would be privileged, and why. Any such proffer shall be served on counsel to the Trustee, concurrent with its filings before the Court.

W. As to question # 23: Respondents shall answer the question within 10 days of entry of this Order. Attorney Benson Weintraub shall, prior to filing his answer, make reasonable inquiry of records held by Sonnett Sale & Kuehne, P.A., so as to allow him to file an informed and informative response to the question.

X. As to question # 24: Weintraub and Karlan will file amended responses, within 10 days of the entry of this Order, setting forth what reasonable inquiries each made prior to stating that each is "unaware of the destruction of any documents." Rodriguez shall answer the question within 10 days of entry of this Order.

2 Karlan, Rodriguez and Weintraub shall respond to each question (# 1—# 24) as presented by Counsel to the Trustee, as set forth above, no later than ten days after entry of this Order.

3 Karlan, Rodriguez and Weintraub shall produce full copies of all documents requested by the Trustee no later than 10 days after entry of this Order.

4. The Clerk shall unseal and produce for the Trustee's inspection, all sealed documents which Karlan, Rodriguez and/or Weintraub have earlier filed for this Court's in-camera review. Such documents shall be unsealed by the Clerk and made available to the Trustee and his counsel ten days after entry of this Order.

5. Respondent's motion(s) to quash the Trustee's subpoenas are denied in their entirety.