FILED
United States Court of Appeals
Tenth Circuit

December 4, 2024

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

In re:  MOTIVA PERFORMANCE
ENGINEERING, LLC,

     Debtor.

------------------------------

PHILIP MONTOYA, as Chapter 7 Trustee
for Motiva Performance Engineering, LLC,

     Plaintiff - Appellee,

v.

WILLIAM S. FERGUSON;
DEALERBANK FINANCIAL
SERVICES, LTD; ARMAGEDDON
TOOL & DIE, LTD.,

     Defendants - Appellants,

and

DAVID ROCHAU; ARMAGEDDON
HIGH PERFORMANCE SOLUTIONS,
LLC; AVATAR RECOVERIES, LLC,

     Defendants.

No. 24-2028
(BAP No. 23-003-NM)
(Bankruptcy Appellate Panel)

_____

## ORDER AND JUDGMENT[*]

_____

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral

(continued)

_____

Before **TYMKOVICH**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

Appellant William Ferguson, an attorney and car enthusiast, formed debtor Motiva Performance Engineering, LLC (Motiva), to pursue several automotive related business ideas and to allow Mr. Ferguson to purchase cars for his own use without having to pay state excise tax. After losing a significant amount of money and being sued by a disgruntled customer, Motiva filed for bankruptcy. Before Motiva did so, however, it transferred vehicles it owned to Mr. Ferguson or to other entities he controlled. Motiva also transferred certain of its assets to another entity controlled by Mr. Ferguson.

The bankruptcy trustee (Trustee) filed an adversary proceeding against Mr. Ferguson and his related entities asserting claims for turnover, voidable transfers, breach of fiduciary duty, alter ego/veil piercing, and disallowance of claims. Following a trial on the merits, the bankruptcy court found in favor of the Trustee on most of those claims.

Mr. Ferguson and two of his entities (Appellants) appealed to the Bankruptcy Appellate Panel (BAP). The BAP affirmed the bankruptcy court's judgment. Appellants now appeal to this court. Exercising jurisdiction under 28 U.S.C. §§ 158(d)(1) & 1291, we likewise affirm the judgment of the bankruptcy court.

_____

estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

2

I

*Motiva*

Motiva is a limited liability company that was formed in 2007.  After Motiva's articles of organization were filed in 2007, no further documents were ever created to detail the company's ownership, management decisions, internal operations, or agreements among the members.

Mr. Ferguson was the majority member of Motiva.  Defendant David Rochau was a minority member, along with two other individuals.  The record contains conflicting evidence regarding whether Mr. Ferguson or Mr. Rochau served as Motiva's managing member.

Mr. Ferguson served as the sole source of funding for Motiva.  Over the years, Mr. Ferguson loaned approximately $750,000 to Motiva.  Mr. Ferguson and Mr. Rochau orally agreed that, until Motiva repaid the loans from Mr. Ferguson, Mr. Ferguson could treat Motiva as owned solely by him for income tax purposes.

Motiva had three legitimate purposes prior to filing for bankruptcy: to operate a shop in Albuquerque, New Mexico, that would make high-performance modifications to customer's vehicles using after-market parts purchased from different vendors; to sell high-performance or unique vehicles on consignment; and to develop and market products to high-performance vehicle enthusiasts.  Motiva, however, was never a profitable business and, between 2012 and 2018, it lost approximately $339,500.

3

Mr. Ferguson used Motiva's car dealer license to purchase at least 23 vehicles. Mr. Ferguson paid for the vehicles with his own money but titled the vehicle's in Motiva's name.  By using Motiva's dealer license to purchase the vehicles, Mr. Ferguson avoided paying New Mexico excise tax liability associated with the purchases.  Mr. Ferguson, however, drove the vehicles for his own personal use.

*The turbo kit project*

In 2011, Mr. Ferguson and Mr. Rochau began developing an aftermarket turbocharging kit that would be sold for installation on certain engines.  Although the two men purportedly intended for the project to be separate from Motiva, they were lax about paperwork and the manner in which they handled the project's financial dealings.  From 2011 until early 2017, there was no separate entity for carrying out the project, and no writing memorializing their agreement or understanding about the project.  The funding provided by Mr. Ferguson for the project's research and development flowed through a Motiva bank account and Mr. Ferguson claimed those expenditures as Motiva expenses for tax purposes.  Likewise, checks payable on account of the project were made out to Motiva and deposited into a Motiva bank account.

Mr. Ferguson and Mr. Rochau eventually hired a North Carolina company to manufacture the turbo kits.  Between October 2015 and September 2016, that manufacturer sold 361 turbo kits to Armageddon Turbo Systems (ATS) for a total purchase price of $655,565.  ATS was merely a "doing business as" alias for Motiva. The shipping address for ATS was the same as Motiva's business address, all of the

4

turbo kits were stored on Motiva's premises, and Motiva's name appeared on purchase orders and invoices for the turbo kits. Further, Motiva's name was used prominently in a YouTube video promoting the turbo kits.

In 2017, Mr. Ferguson and Mr. Rochau formed an entity called Armageddon High Performance Solutions (AHPS) for purposes of carrying out the project. The New Mexico Secretary of State's website lists Mr. Ferguson as the sole manager and member of AHPS at the time of its organization. The assets of the turbo project were transferred to AHPS at some point after its formation.

Mr. Ferguson listed AHPS on Schedule C of his 2020 federal tax return, indicating that the entity was a sole proprietorship.

### The Valles lawsuit

In 2016, a 2012 Ferrari FF that was owned by Motiva but driven by Mr. Ferguson for his personal use was slightly damaged while parked at Mr. Ferguson's law office in Albuquerque. Mr. Ferguson's law firm sued Andrea Valles, the individual who backed into the Ferrari. In 2017, Motiva settled the lawsuit with Valles's insurance carrier. The insurance carrier issued a check to Motiva and Mr. Ferguson's law firm in the amount of $40,948.49. Mr. Ferguson deposited those funds in his personal bank account.

### The dispute with Creig Butler

In 2014, an individual named Creig Butler hired Motiva to upgrade a 2009 Hummer. Butler later sued Motiva in state court alleging that, due to Motiva's work, the Hummer was unsafe to drive. Mr. Ferguson's law firm represented Motiva. The

5

case proceeded to trial in October 2018. The jury found in Butler's favor and awarded him $292,001 in damages, plus attorney's fees, costs, and post-judgment interest, resulting in a total judgment of $337,317.90.

*Mr. Ferguson's response to the Butler verdict*

Mr. Ferguson, in response to the judgment, agreed with Mr. Rochau to cease Motiva's operations. Further, Mr. Ferguson transferred title to five of the vehicles, including the 2012 Ferrari, from Motiva to an entity he owned named Dealerbank Financial Services, Ltd. (Dealerbank). Although the initial acquisition costs of those five vehicles totaled $609,166, Mr. Ferguson purportedly sold them to Dealerbank for a total of $162,000. Further, although there are purchase agreements documenting these transfers, there is no evidence that Dealerbank actually paid Motiva for the vehicles.

The state court overseeing the Butler action issued a writ of execution directing the county sheriff to seize Motiva's assets, including the turbo kits that were on Motiva's premises. Mr. Ferguson, however, interrupted the seizure of the turbo kits and alleged that another company he owned, Avatar Recoveries, LLC (Avatar), had a landlord's lien on those kits. As a result, the writ of execution was returned unsatisfied.

Mr. Butler then filed an application for a preliminary injunction freezing Motiva's assets, including the Ferrari and related insurance proceeds from the Valles settlement. The state court granted the injunction. Before the parties finalized the

injunction terms, Mr. Ferguson borrowed $120,000 from Main Bank and caused

Dealerbank to pledge the 2012 Ferrari as collateral for the loan.

Mr. Butler responded by filing a motion asking the state court to declare that

Motiva owned the 2012 Ferrari and the turbo kits.  While that motion was pending,

Mr. Ferguson transferred five more of the vehicles titled in Motiva's name to

himself, Dealerbank, defendant Armageddon Tool & Die, Ltd. (Armageddon) which

was a company solely owned by Ferguson, and to one other individual.  In late

October 2019, the state court issued an order finding that Motiva owned the 2012

Ferrari and the turbo kits.[1]

*The bankruptcy proceedings*

On November 1, 2019, Motiva filed a petition for chapter 11 bankruptcy relief.

Motiva later converted the case to chapter 7.

In September 2021, the Chapter 7 Trustee filed an adversary proceeding

against Mr. Ferguson, Dealerbank, and other related entities.  The complaint alleged

claims for turnover, voidable transfers under bankruptcy and state law (including

claims of actual and constructive fraud), breach of fiduciary duties, alter ego/veil

piercing, and disallowance of claims.

---

[1] The state court, after learning of Mr. Ferguson's actions, entered an order of civil contempt against him.  Further, in June 2021, the New Mexico Supreme Court censured Mr. Ferguson, suspended him from practicing law for ninety days, and required him to take a professional responsibility exam.  In doing so, the New Mexico Supreme Court focused on Mr. Ferguson's inconsistent treatment of the Ferrari and concluded he could not claim Motiva owned the Ferrari when it benefited him, and then deny ownership when it would mean a financial loss.

Following a trial on the merits, the bankruptcy court issued an opinion and judgment in favor of the Trustee on seven claims. In doing so, the bankruptcy court found that Motiva never filed a federal tax return and that Mr. Ferguson's tax returns revealed he treated Motiva as a disregarded entity under New Mexico state law. The bankruptcy court concluded that such treatment implied that Mr. Ferguson was the sole owner of Motiva. The bankruptcy court also concluded that this circumvented proper accounting principles since two other members allegedly held interests in Motiva.

The bankruptcy court found that, at points convenient to him, Mr. Ferguson reversed his position on each of the following matters: (a) whether Motiva owned the Ferrari or any of the other cars in its name; (b) whether the cars owned by Motiva were worth what was paid for them; (c) whether he was the sole owner of Motiva; (d) whether Motiva invested at least $575,000 in the turbo project; (e) whether Motiva was intimately involved in the turbo project; (f) whether Motiva was and always had been insolvent; (g) whether he loaned $725,000 to Motiva[2]; (h) whether Motiva used cash basis accounting; (i) whether he and Mr. Rochau were partners in the turbo project; (j) the date when the turbo project started and when it was formally organized; and (k) how many members AHPS had once it was formally organized.

---

[2] In the Chapter 7 proceeding, Mr. Ferguson listed himself as a creditor of Motiva in the amount of $730,000 and included this amount as a debt, rather than equity, on Motiva's books. But in the adversary proceeding, Mr. Ferguson argued that the loans were actually equity contributions.

The bankruptcy court found that Motiva, Avatar, Dealerbank, and Armageddon were the alter egos of Mr. Ferguson, acting under his domination and control and used for his personal purposes. The bankruptcy court also found that Mr. Ferguson used Motiva and his other entities for improper purposes, including the avoidance of excise taxes, income taxes, and creditor claims, and by doing so harmed Butler and Motiva's other creditors.

The bankruptcy court concluded, in relevant part, that: (a) appellants were liable under the Bankruptcy Code and state law for fraudulent transfer of ten vehicles; (b) Mr. Ferguson breached his fiduciary duty to Motiva; (c) Motiva, Avatar, Dealerbank, and Armageddon were all the alter egos of Mr. Ferguson and that Mr. Ferguson used those companies for improper purposes; and (d) Mr. Ferguson was liable for Motiva's debts.

### *The BAP appeal*

Appellants appealed the bankruptcy court's decision to the BAP. On January 23, 2024, the BAP issued an opinion affirming the bankruptcy court's decision.

Appellants now appeal to this court.

## II

"When a party appeals from the BAP, we independently review the underlying bankruptcy court's decision, examining its legal conclusions de novo and its factual findings for clear error." *In re Chuza Oil Co.*, 88 F.4th 849, 854 (10th Cir. 2023) (internal quotation marks and brackets omitted). "The BAP's ruling—although not entitled to deference—may be and often is persuasive." *Id.*

9

*Ownership of the vehicles*

Appellants argue that the BAP and the bankruptcy court erred in resolving issues related to the ownership of the vehicles in favor of the Trustee.  For the reasons outlined below, we disagree.

The bankruptcy court concluded that the vehicles titled in Motiva's name "were transferred with the actual intent to hinder, delay, or defraud creditors." Aplt. App. vol. III at 528.  Although Appellants argued that no transfers occurred because Motiva did not pay for, and thus did not own, the vehicles, the bankruptcy court rejected that argument.  The bankruptcy court concluded, citing cases discussing the doctrine of quasi-estoppel and the duty of consistency, that Mr. Ferguson was "barred" from arguing "that Motiva d[id] not own the" vehicles "because he previously represented to the New Mexico Taxation and Revenue Department that Motiva *did* own them" so that he could "avoid[] paying excise tax on the" vehicles.  *Id.* at 529.  The BAP, in affirming the bankruptcy court's decision, concluded it relied on a proper application of the principles underlying the doctrine of quasi-estoppel and thus did not err in determining Motiva owned the vehicles.

Appellants now argue that the "BAP erroneously disregarded the *Erie* doctrine, and the steps it requires, in resolving ownership of the vehicles by applying quasi-estoppel, an equitable rule not recognized in the law of New Mexico." Aplt. Br. at 16.  This argument fails for at least two reasons.  First, the object of our review is the bankruptcy court's decision, not the BAP's decision.  *See In re Bryan*, 857 F.3d 1078, 1081 (10th Cir. 2017) (noting that this court "reviews only the

10

bankruptcy court's decision" (internal quotation marks and brackets omitted)).  As we have noted, the BAP's decision is entitled to no deference.  Second, defendants have forfeited any argument that New Mexico law governs the bankruptcy court's application of equitable principles in determining the ownership of the vehicles at issue.  That is because defendants never presented that argument to the bankruptcy court and, in turn, failed to make the argument in the opening brief they filed with the BAP.[3]  *See In re Foster*, 188 F.3d 1259, 1264 n.5 (10th Cir. 1999) (holding that trustee forfeited argument by failing to raise it on appeal to the district court).

Defendants next argue that the BAP "improperly concluded" defendants "waived arguments against the application of quasi-estoppel based on the lack of mutuality . . . because they did not raise it until they filed their reply brief" with the BAP.  Aplt. Br. at 16.  According to defendants, "[t]his reasoning unfairly overlooks the fact that the Trustee did not propose substituting quasi-estoppel for the duty of consistency until the Trustee filed his response brief." *Id.*

This argument fails.  As noted, the proper object of our review is the bankruptcy court's decision, not the BAP's decision.  Further, the BAP concluded that Appellants waived this argument by raising it for the first time in their reply brief.  Lastly, we reject defendants' assertion that the BAP, at the suggestion of the

---

[3] In the motion for reconsideration they filed with the bankruptcy court, defendants argued that the evidence presented at trial was inconsistent with the court's finding that the vehicles belonged to Motiva.  Aplt. App. vol. III at 550–51.  In their opening brief with the BAP, defendants argued that the bankruptcy court erred by failing to follow *Tenth Circuit law* concerning the duty of consistency. *Id.* at 669–678.

trustee, somehow altered the substance of the bankruptcy court's decision by "substituting quasi-estoppel for the duty of consistency." *Id.* In fact, the record makes clear that when the BAP analyzed the bankruptcy court's decision, it rejected defendants' argument that the bankruptcy court applied the duty of consistency, and agreed with the trustee that the bankruptcy court "applied the principles underlying the doctrine of quasi estoppel," in reaching its conclusion that Motiva owned the vehicles at issue. Aplt. App. vol. III at 786.

Finally, defendants argue that the bankruptcy court "exceeded the subject matter jurisdiction boundaries created by 11 U.S.C. § 541(d) in applying equitable theories to resolve disputed ownership" of the vehicles at issue. Aplt. Br. at 17. They argue in support that it was undisputed Motiva did not pay for the vehicles and thus had only "bare legal title" to the vehicles. *Id.* As a result, they argue, the bankruptcy court was required to conclude that the vehicles were not part of Motiva's bankruptcy estate, and it exceeded its jurisdiction by concluding otherwise.

We find no merit to these arguments. The commencement of a case under the Bankruptcy Code "creates an estate" generally comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case," "wherever located and by whomever held." 11 U.S.C. § 541(a)(1). To be sure, the estate does not include "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest." 11 U.S.C. § 541(d). But § 541(d) in no way limits a bankruptcy court, which is a "court[] of equity," from "apply[ing] the principles and rules of equity jurisprudence" in determining whether a piece of

12

property is part of the debtor's estate. *Young v. United States*, 535 U.S. 43, 50 (2002) (internal quotation marks omitted); *see Pepper v. Litton*, 308 U.S. 295, 304 (1939) (noting that "a bankruptcy court is a court of equity" and its "granted powers" include "the collection and distribution of the estates of bankrupts and the determination of controversies in relation thereto"); *In re Gardner*, 913 F.2d 1515, 1517–18 (10th Cir. 1990) (holding that "[b]ankruptcy courts have jurisdiction over core proceedings" and that the "determination of whether [certain] property is part of the bankruptcy estate is a core proceeding").

### *Piercing the corporate veil*

Defendants also seek to challenge the bankruptcy court's decision to pierce the corporate veil and find Mr. Ferguson liable for Motiva's debts. The problem for defendants, however, is the BAP found that defendants "did not challenge the veil-piercing determination as an issue on appeal [to the BAP] or in their statement of issues in the opening brief" and did not "adequately brief the issue in their opening brief." Aplt. App. vol. III at 799. Consequently, the BAP concluded defendants "waived this argument." *Id.* Although defendants attempt to challenge the BAP's conclusion, they do not seriously dispute the BAP's underlying findings regarding the content of the opening brief they filed with the BAP. All of which leads us to conclude that defendants have forfeited, for purposes of this appeal, any challenge to the bankruptcy court's decision to pierce the corporate veil. *See In re Foster*, 188 F.3d at 1264 n.5.

13

*Breach of fiduciary duty and damages*

Finally, Mr. Ferguson challenges the bankruptcy court's findings and conclusions regarding the Trustee's breach of fiduciary duty claim. That claim related to Mr. Ferguson's handling of the turbo project assets. The Trustee claimed that Motiva owned the tangible and intangible project assets and should have been compensated when those assets were assigned to AHPS. The bankruptcy court ultimately agreed with the Trustee and based its conclusion on Mr. "Ferguson's tax treatment of the [turbo] project expenses." Aplt. App. vol. III at 533. More specifically, the bankruptcy court noted that in 2016 Mr. Ferguson treated "the cost of the turbo project . . . as a Motiva expense on [his] tax return" and apparently did the same in 2017 and 2018. *Id.* The bankruptcy court therefore found "that at least until March 3, 2017, and perhaps later, the turbo project was a Motiva asset." *Id.* The bankruptcy court in turn concluded that Mr. Ferguson "breached his duty of loyalty to Motiva by transferring the turbo project assets to [AHPS] without obtaining reasonable compensation for Motiva." *Id.* And "[b]ecause the only verifiable number about the value of the turbo project when Motiva claimed to own it [wa]s $575,082 (per Motiva's Schedule C)," the bankruptcy court "enter[ed] judgment for that amount against [Mr.] Ferguson" on the breach of fiduciary duty claim. *Id.*

Mr. Ferguson now argues in this appeal that "[t]he Bankruptcy Court erroneously relied on Mr. Ferguson's 2016 tax return as evidence that [Motiva] owned" the turbo project. Aplt. Br. at 19. That reasoning, he argues, "plac[ed] form

14

above the economic substance and reality of [Motiva] having paid nothing for the enterprise's expenses." *Id.* He also argues that "Tenth Circuit precedents discourage Bankruptcy Courts from treating tax returns as decisive, even when a party's tax returns reflect a position inconsistent with the position the party is asserting in bankruptcy litigation." *Id.*

We find no merit to these arguments. As the BAP persuasively noted in rejecting these same arguments, Mr. Ferguson's 2016 tax treatment of the turbo project expenses "was not the sole basis" for the bankruptcy court's finding that Motiva owned the turbo project. Aplt. App. vol. III at 795. Although the bankruptcy court indeed relied on Mr. Ferguson's tax treatment of the expenses, it also relied on evidence that (a) the turbo project used Motiva's property, name, storage, purchasing power, and address, (b) Mr. Ferguson and others relied heavily on Motiva for the turbo project's development, (c) the asserted owner, AHPS, did not exist until many years after the turbo project began, and (d) Mr. Ferguson did not list AHPS on his tax returns until 2020. Like the BAP, we conclude the bankruptcy court did not clearly err in finding that Motiva owned the turbo project at the time Mr. Ferguson transferred it to AHPS.

Mr. Ferguson also argues that the bankruptcy court adopted an unreasonable measure of damages for the breach of fiduciary duty claim. More specifically, he argues that the bankruptcy court *sua sponte* relied on "the $575,082 reported as losses related to research and experimentation expenses for the turbo-charging project" instead of relying on the commonly used business or asset valuation

15

methods. Aplt. Br. at 19–20. He argues that "[t]he fact that the $575,082 expense figure was 'verifiable' did not explain its reasonableness or make it relevant or useful as an appropriate yardstick for compensatory damages." *Id.* at 50.

We reject these arguments. "The purpose of compensatory damages" under New Mexico law, including for breach of fiduciary duty claims, "is to make the injured party whole by compensating it for losses." *Moody v. Stribling*, 985 P.2d 1210, 1220 (N.M. Ct. App. 1999) (internal quotation marks omitted). Compensatory damages for breach of fiduciary duty "need not be proven with mathematical certainty" and instead must only be "supported by substantial evidence." *Id.*

In his opening brief to the BAP, Mr. Ferguson conceded there are "three primary methods for determining the value of a business," i.e., "a market approach, a net asset or cost approach, and an income approach." Aplt. App. vol. III at 686. The BAP concluded, and we agree, that the bankruptcy court effectively relied on the cost approach in assessing compensatory damages for the breach of fiduciary duty claim. *See generally In re Virtual Citadel, Inc.*, 113 F.4th 1304, 1311 (11th Cir. 2024) (concluding, in the context of a bankruptcy appeal, that "[t]he cost approach . . . is used to value special-purpose properties, and other properties that are not frequently exchanged in the market" (internal quotation marks omitted)). That approach was reasonable because the assets at issue were special-purpose items and there was no evidence that assets of that type were regularly exchanged in the market. *See id.* Further, as the BAP noted, the bankruptcy court relied, in part, on Mr. Ferguson's own valuation of the investments in the turbo project, which were included in his

16

2016 tax return, to effectively measure the cost to Motiva of obtaining other assets of equal value or utility.  The bankruptcy court also had before it a balance sheet for AHPS, dated December 31, 2017, that showed the total equity in the project at $795,827.25.  Defendants presented no evidence regarding the value of the turbo project at the time of its transfer to AHPS.  In light of this record, we agree with the BAP that the bankruptcy court's compensatory damage award was supported by substantial evidence.

III

The judgment of the bankruptcy court is affirmed.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge